UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ANGELIC PIERCE, individually, and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>SAFE CREDIT UNION, a California Corporation; and DOES 1 through 100, inclusive,<br><br>     Defendants. | No. 2:20-cv-985 WBS DB<br><br>MEMORANDUM AND ORDER RE: MOTION TO REMAND |

----oo0oo----

Plaintiff Angelic Pierce filed this action against defendant SAFE Credit Union ("SAFE") and Does 1 through 100, alleging various state law claims arising out of plaintiff's checking account with SAFE.  Before the court is plaintiff's motion to remand.  (Docket No. 10.)

I.   Factual and Procedural Background

Defendant is a credit union and offers its customers checking accounts.  (Compl. ¶ 14 (Docket No. 1).)  Plaintiff

1

1 opened a checking account with defendant SAFE.  (Compl. ¶ 59.)
2 When opening the account, plaintiff entered into an agreement
3 ("account agreement") that included "overdraft" and "overdraft
4 privilege service" provisions governing instances in which an
5 account is overdrawn.  (Id. ¶¶ 31-32.)  On some occasions,
6 defendant allegedly improperly assessed overdraft fees because it
7 determined sufficiency of funds based on an account's "available
8 balance" -- the actual balance minus anticipated debits and
9 credits in the future (that may or may not occur) -- rather than
10 its "actual balance."  (Id. ¶¶ 26-29.)  This practice resulted in
11 SAFE charging overdraft fees even "when there is enough money in
12 the account to cover the transaction."  (Id. ¶ 35.)
13         Further, although the account agreement provided that
14 SAFE would charge "'a' (singular) 'fee'" when funds were
15 insufficient to cover a transaction, SAFE charged multiple fees
16 for the same item.  (Id. ¶¶ 36-37.)  Defendant charged a fee when
17 an electronic transaction was first processed for payment and the
18 account had insufficient funds, and again when the same
19 transaction was presented for processing again by the payee, even
20 when the account holder took no action to resubmit the
21 transaction for payment.  (Id.)  Defendant disclosed neither its
22 practice of using the "available balance" for its calculations
23 nor its practice of charging multiple fees on the same item.
24 (Id. ¶ 25.)
25         Plaintiff filed suit in state court alleging the
26 following five causes of action: (1) breach of contract; (2)
27 breach of the implied covenant of good faith and fair dealing;
28 (3) unjust enrichment; (4) money had and received; and (5)

violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.  (See generally Compl.)

Defendant removed the action under federal question jurisdiction.  (Notice of Removal (Docket No. 1).)  Specifically, defendant contended that because plaintiff's UCL claim alleges a violation of Regulation E, 12 C.F.R. §§ 1005, et seq., plaintiff's claim necessarily raises a federal question and therefore confers subject matter jurisdiction upon this court.  (Id. at 4, ¶ 10.)

II. Motion to Remand

    A.  Legal Standard

A defendant may remove "any civil action brought in a State court of which the district courts . . . have original jurisdiction."  28 U.S.C. § 1441.  Original jurisdiction may be based on either diversity jurisdiction or federal question jurisdiction.  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  The federal removal statutes are strictly construed, and federal court must remand to the state court "if there is any doubt as to the right of removal in the first instance."  Id.

The district courts have original jurisdiction under the federal question statute over cases "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "Federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually

3

1  disputed, (3) substantial, and (4) capable of resolution in
2  federal court without disrupting the federal-state balance
3  approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013).
4  "Where all four of these requirements are met . . . jurisdiction
5  is proper." Id.
6     The parties dispute only whether plaintiff's UCL claim
7  "necessarily raise[s]" a federal issue.  "[T]he mere presence of
8  a federal issue in a state cause of action does not automatically
9  confer federal-question jurisdiction." Merrell Dow Pharm. Inc.
10 v. Thompson, 478 U.S. 804, 813 (1986).  Further, "[w]hen a claim
11 can be supported by alternative and independent theories -- one
12 of which is a state law theory and one of which is a federal law
13 theory -- federal question jurisdiction does not attach because
14 federal law is not a necessary element of the claim." Rains v.
15 Criterion Sys., Inc., 80 F.3d 339, 346 (9th Cir. 1996).  In other
16 words, "a claim supported by alternative theories in the
17 complaint" does not establish federal question jurisdiction
18 unless federal law "is essential to each of those theories." See
19 id. (applying Christianson v. Colt Indus. Operating Corp., 486
20 U.S. 800, 810 (1988)); see also Mulcahey v. Columbia Organic
21 Chems. Co., 29 F.3d 148, 153 (4th Cir. 1994) ("Christianson
22 teaches us that, if a claim is supported not only by a theory
23 establishing federal subject matter jurisdiction but also by an
24 alternative theory which would not establish such jurisdiction,
25 then federal subject matter jurisdiction does not exist.").
26   B.   Application
27     Plaintiff's fifth cause of action alleges defendant's
28 practices relating to overdraft fees constitute acts of unfair

4

competition under the UCL. (Compl. ¶¶ 97-105.) Under the UCL, an act of unfair competition includes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Each of the UCL's three prongs is "a separate and distinct theory of liability" and each offers "an independent basis for relief." See Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009).

Here, plaintiff alleges liability based on both the unlawful and unfair prongs. (Compl. ¶¶ 100-102.) To establish federal question jurisdiction, defendant must therefore show that the resolution of a federal issue is essential to each of plaintiff's two theories of liability. See Rains, 80 F.3d at 346.

1.  Unlawful Prong

"By proscribing 'any unlawful' business practice, '[the UCL] 'borrows' violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). Plaintiff alleges that defendant's conduct is "unlawful" because it violates the "Opt-In Rule" of Regulation E, 12 C.F.R. § 1005.17, which requires a financial institution to provide the consumer with a notice ("Opt-In Contract") describing the overdraft service. The court finds that defendant's liability under the "unlawful" prong necessarily turns upon defendant's compliance with a federal regulation and plaintiff does not appear to dispute this point. (See generally Mot.) Resolution of a federal issue is therefore essential to this theory of

liability.

### 2. Unfair Prong

"California courts have not uniformly settled on a single approach to defining 'unfair' business practices in a consumer action under the UCL." Moralez v. Kern Sch. Fed. Credit Union, No. 1:15-CV-01444 DAD, 2016 WL 2756427, at *3 (E.D. Cal. May 12, 2016) (citing Lozano v. AT & T Wireless Servs., Inc., 504 F.3d 718, 736 (9th Cir. 2007)).  Prior to 1999, California courts applied what is known as the "balancing test."  Courts "defined 'unfair' business practices as those 'offend[ing] an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,'" or where the utility of the defendant's conduct does not outweigh the gravity of the harm to the victim.  See id.; Cel-Tech, 20 Cal. 4th at 184.

In 1999, the California Supreme Court rejected that test and held that a finding of unfairness must instead "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." Cel-Tech, 20 Cal. 4th at 186-87.  The Cel-Tech court, however, expressly declined to extend this standard to consumer actions.  Id. at 187 n.12. Given this split in authority, the Ninth Circuit has concluded that a UCL claim under the "unfair" prong may proceed under either of these standards.  Lozano, 504 F.3d at 736.

Plaintiff proceeds only under the balancing test. Under the balancing test, "a determination of unfairness involves an examination of [the practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the

alleged wrongdoer." McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1473 (2d Dist. 2006) (internal citations omitted); see also Lozano, 504 F.3d at 735.

Here, plaintiff properly pleads a UCL claim for unfair conduct under the balancing test.  Plaintiff alleges that defendant's conduct is "unfair" because it "was not motivated by any legitimate business or economic need or rationale," "[t]he harm and adverse impact of SAFE's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications of motives," and that the harm to plaintiff in the form of "improper, abusive, and/or unconscionable" overdraft fees when the account had sufficient funds "outweighs the utility, if any, of those practices." (Compl. ¶¶ 100-101.)  Plaintiff properly alleges that the harm caused by defendant's conduct outweighs its utility, and therefore sufficiently pleads liability under the UCL's "unfair" prong.

Further, plaintiff's theory of liability is independent of defendant's compliance with federal law and defendant does not appear to disagree.  (See generally Opp'n (Docket No. 11).) Accordingly, because plaintiff may prevail on her UCL claim without reliance on federal law, plaintiff's claim does not "necessarily raise" a federal issue and does not give rise to federal question jurisdiction.  See Gunn, 568 U.S. at 258.

For the same reasons, other district courts that have considered this issue in virtually identical overdraft-fee class actions have reached the same conclusion.  See, e.g., Moralez, 2016 WL 2756427, at *3 (alleging liability under the "unlawful"

7

1  and "unfair" prongs of the UCL); Lawrence v. Provident Savings
2  Bank, FSB, Case No. 5:16-cv-00352-SVW-MRW, 2016 WL 2979194, at *2
3  (C.D. Cal. May 23, 2016) (same).  The courts in Moralez and
4  Lawrence both concluded that, because plaintiffs' allegations
5  established liability under the UCL's "unfair" prong
6  independently of federal law, "no federal question jurisdiction
7  attache[d]."  Moralez, 2016 WL 2756427, at *3.  The same is true
8  here and the court is unaware of authority to the contrary in
9  analogous circumstances.
10         Indeed, every case defendant cites in support is
11 immediately distinguishable because the resolution of each of
12 those cases depended "entirely" on the courts' adjudication of
13 federal law.  See California ex rel. Lockyer v. Dynegy, Inc., 375
14 F.3d 831, 841 (9th Cir. 2004) ("The state lawsuit turns,
15 entirely, upon the defendant's compliance with a federal
16 regulation."); see also, e.g., Cent. Valley Med. Grp., Inc. v.
17 Indep. Physician Assocs. Med. Grp., Inc., No. 1:19-CV-00404 LJO
18 SKO, 2019 WL 2491328, at *3 (E.D. Cal. June 14, 2019)
19 ("Plaintiff's sole theory of UCL unfair competition liability is
20 that [defendant's] conduct violates policies tethered to federal
21 antitrust laws.  Plaintiff does not explicitly plead in its
22 complaint . . . that [defendant's] alleged conduct violates
23 policies tethered to California-specific constitutional,
24 statutory, or regulatory provisions."); Johnson v. Morrison
25 Homes, Inc., No. 2:08-CV-01600, 2010 WL 2942745, at *3 (E.D. Cal.
26 July 23, 2010) ("Whether or not Defendants violated the federal
27 statute controls Plaintiff's right to relief" because
28 "[u]navoidably, the state law claim 'turns, entirely, upon the

defendant's compliance with a federal regulation.'"); Cty. of Santa Clara v. Astra USA, Inc., 401 F. Supp. 2d 1022, 1025 (N.D. Cal. 2005) ("For this case to be resolved on its merits, at least one of the federal issues embedded in the complaint must be addressed. There is simply no other way."); Nat'l Credit Reporting Ass'n, Inc. v. Experian Info. Sols., Inc., No. C04-01661 WHA, 2004 WL 1888769, at *1 (N.D. Cal. July 21, 2004) (finding federal question jurisdiction where plaintiff alleged that defendant's business practices were "unfair, unlawful, and deceptive" because they "violate[] state and federal antitrust laws").  None of these cases, unlike the matter at hand, involved alternative theories of liability independent of violations of federal law.

Finally, defendant argues that the allegations under the "unlawful" prong involve conduct distinct from those under the "unfair" prong, such that the unlawful conduct constitutes a separate UCL claim.  (Opp'n at 4-5, 7-9.)  Specifically, defendant alleges that the Complaint challenges three practices: while the "unfair" prong allegations cover defendant's practices of charging overdraft fees based on the "available balance" and charging multiple fees for a single item, plaintiff's "unlawful" prong addresses defendant's third practice of charging overdraft fees on "ATM and non-recurring transactions."  (Compl. ¶ 102; Notice of Removal ¶ 7.)  Plaintiff, on the other hand, contends that the third practice is a subset of the other two.

The court agrees with plaintiff.  First, plaintiff is "the master of the claim" and "may avoid federal jurisdiction by exclusive reliance on state law."  Caterpillar, 482 U.S. at 392.

9

Here, plaintiff pleaded his UCL claim as a single claim under at least one state law theory of liability, and, as "master of the complaint," "cho[se] to have the cause heard in state court." Id. at 398-99.  Defendant cannot rewrite plaintiff's claim so as to confer federal jurisdiction.

Further, the conduct that plaintiff alleges is "unfair" is the same conduct that plaintiff alleges is "unlawful."  The conduct that allegedly violates Regulation E is the "charging of overdraft fees on ATM and nonrecurring transactions."  (Compl. ¶ 102; see also id. ¶¶ 33-38 (alleging that charging overdraft fees "when there is enough money in the account to cover the transaction" (id. ¶ 35) and charging more than one fee "for the same item" (id. ¶ 36) violate Regulation E).)  This conduct is also the basis for plaintiff's allegations under the "unfair" prong.  (Compl. ¶ 100 ("SAFE's conduct violates the UCL's 'unfair' prong insofar as SAFE charges multiple NSF fees on a single item, and charges overdraft or NSF fees when there is enough money in an account to cover a transaction.").)  Indeed, at oral argument, plaintiff clarified that the only two practices at issue were defendant's use of the "available balance" and charges of multiple fees per item. Plaintiff's allegations of "unfair" and "unlawful" conduct therefore constitute only one UCL claim.

Because none of plaintiff's causes of action necessarily raise a federal issue, "defendant has failed to establish a basis sufficient to confer federal subject matter jurisdiction on this court."  Cf. Moralez, 2016 WL 2756427, at *5.  The court will therefore remand this action.

10

IT IS THEREFORE ORDERED that plaintiff's motion to remand (Docket No. 10) be, and the same hereby is, GRANTED;

AND IT IS FURTHER ORDERED that this action be, and the same hereby is, REMANDED to the Superior Court of the State of California, in and for the County of Sacramento.

Dated: July 17, 2020

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE